United States District Court
Southern District of Texas
FILED

JUN 22 2021

**Nathan Ochsner, Clerk**

United States District Court
Southern District of Texas

**ENTERED**

June 22, 2021

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

|  |  |  |
|---|---|---|
| MARIA GRACIELA FERNANDEZ CARDONA, | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO. 7:19-CV-2 |
| VS. | § § | |
| MERRICK GARLAND, *et al.*,[1] | § § | |
| Defendants. | § § | |

## REPORT AND RECOMMENDATION

Plaintiff Maria Graciela Fernandez Cardona ("Plaintiff"), who was born in Mexico, brought this lawsuit pursuant to 8 U.S.C. § 1503(a) seeking to establish her citizenship in the United States. Plaintiff claims to have derived citizenship from her natural-born United States citizen mother and seeks a declaratory judgment from this Court declaring same. Defendants Merrick Garland in his official capacity as U.S. Attorney General and Alejandro Mayorkas in his official capacity as U.S. Secretary of Homeland Security (collectively, the "Government") have submitted a motion for summary judgment, arguing that Plaintiff has not met her burden in proving that she is an American citizen. Plaintiff has filed a response, and the Government has filed a reply to the response.

After carefully considering the record and relevant law, it is recommended that the Government's motion for summary judgment be granted and Plaintiff's lawsuit be dismissed. As

---

[1] The previously named respondents in this action were William P. Barr and Kirstjen M. Nielsen. In the time since this lawsuit has been filed, Merrick Garland has succeeded Barr as the U.S. Attorney General and Alejandro Mayorkas has succeeded Nielsen as the U.S. Secretary of Homeland Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Garland and Mayorkas are automatically substituted as parties. The Clerk is **INSTRUCTED** to update the docket accordingly.

explained further below, Plaintiff has not met her burden in showing that her mother was physically present in the United States for the requisite period of time and, thus, Plaintiff has not shown that she acquired derivative citizenship from her mother.   Accordingly, it is recommended that the Government's motion for summary judgment be granted and that this action be dismissed.

## I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff was born on April 19, 1953, in Matamoros, Tamaulipas, Mexico to the marital union of Francisco Fernandez and Manuela Cardona ("Manuela").   (Docket No. 1-1, at 1–2.) Plaintiff's mother, Manuela, was a United States citizen who was born in Weslaco, Texas, on July 18, 1927. (*See* Docket No. 30-1, at 8–9.)  She died on August 14, 1975, in Mexico.  (Docket No. 30-2, at 2.)  Plaintiff's father was born in Mexico in October 1920.  (Docket No. 30-1, at 14–15.) He died on November 27, 1984, in Mexico.  (Docket No. 30-2, at 2.)

On or about May 24, 2015, Plaintiff filed an N-600 Application for a Certificate of Citizenship, in which she claimed that she derived citizenship through her mother.  (*See* Docket No. 1-3.)  The application was denied on September 29, 2017, on the grounds that Plaintiff failed to provide sufficient documentary evidence that her mother was physically present in the United States for the requisite period of time.  (*Id.*)  Plaintiff subsequently appealed the decision of denial to the Administrative Appeals Office, and the appeal was dismissed on May 30, 2018.  (Docket No. 1-4.)

On January 3, 2019, Plaintiff filed a petition for writ of habeas corpus and complaint for declaratory and injunctive relief against: (1) Matthew Whitaker, the acting U.S. Attorney General; and (2) Kirstjen Nielsen, the U.S. Secretary of Homeland Security.  (Docket No. 1.)  On April 23,

2019, she filed an amended petition. (*See* Docket No. 6.) Plaintiff, pursuant to 8 U.S.C. § 1503(a), seeks a declaratory judgment that she is a United States citizen.[2]

The Government filed a motion for summary judgment on January 29, 2021. (Docket No. 30.) The Government argues that Plaintiff is unable to meet her burden in demonstrating that her mother was physically present in the United States during the period required by the Immigration and Nationality Act of 1952. Plaintiff filed a response on March 5, 2021, (Docket No. 34), and the Government has filed a reply (Docket No. 37).

## II.   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.   Standard of Review

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013). "The moving party bears the initial burden of informing the Court of the basis of its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (cleaned up). Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 301–02 (5th Cir. 2020) ("Where the nonmovant bears the burden of proof at trial, the movant may merely point to an absence of evidence, thus shifting to the non-movant the burden of demonstrating by competent summary judgment proof that there is an issue of material fact warranting trial.")

---

[2] In her initial petition, Plaintiff also sought review, under the Administrative Procedure Act, of the U.S. Citizenship and Immigration Services' decision denying her application for a U.S. passport. (Docket No. 1, at 4.) Plaintiff dropped this claim in her amended petition.

(citation omitted); *Carr v. Air Line Pilots Ass'n, Int'l*, 866 F.3d 597, 601 (5th Cir. 2017) (per curiam) ("Once a movant who does not have the burden of proof at trial makes a properly supported motion for summary judgment, the burden shifts to the nonmovant to show that the motion should not be granted.") (cleaned up). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003) (citations omitted). Rather, the nonmovant must "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (cleaned up); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998) (explaining that nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case") (citation omitted). A court is not obligated to comb the record in search of evidence that will permit a nonmovant to survive summary judgment. *See Adams*, 465 F.3d at 164 (citation omitted). The court may not make credibility determinations or weigh the evidence in deciding a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Rule 56 generally requires that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Inadmissible hearsay is not properly considered in ruling on a motion for summary judgment. *See Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 511 n.5 (5th Cir. 2001) ("Because these statements are hearsay, they are not competent summary judgment evidence.") (citation omitted); *Goodwin v. Johnson*, 132 F.3d 162, 186 (5th

4

Cir. 1997) (explaining that proffered statement was inadmissible hearsay and, thus, was not competent summary judgment evidence) (citation omitted). "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *United States v. El-Mezain*, 664 F.3d 467, 494–95 (5th Cir. 2011) (quoting Fed. R. Evid. 801(c)). Under the Federal Rules of Evidence, hearsay is not admissible unless an exception applies. *See* Fed. R. Evid. 802; *Goodwin*, 132 F.3d at 186. Accordingly, unless an exception is applicable, hearsay "counts for nothing" on summary judgment. *Greer v. Paulson*, 505 F.3d 1306, 1315 (D.C. Cir. 2007) (citation omitted).

**B.     Applicable Law**

Plaintiff seeks a declaration of U.S. citizenship pursuant to 8 U.S.C. § 1503. This statute provides, in pertinent part:

> If any person who is within the United States claims a right or privilege as a national of the United States and is denied such right or privilege by any department or independent agency, or official thereof, upon the ground that he is not a national of the United States, such person may institute an action under the provisions of [28 U.S.C. § 2201] against the head of such department or independent agency for a judgment declaring him to be a national of the United States[.]

8 U.S.C. § 1503(a).

In a case brought under 8 U.S.C. § 1503(a), the court must make a *de novo* determination of whether the plaintiff is a United States citizen. *See Vance v. Terrazas*, 444 U.S. 252, 256 (1980); *Iracheta v. Holder*, 730 F.3d 419, 423 (5th Cir. 2013) (citations omitted). The plaintiff bears the burden of proving, by a preponderance of the evidence, that she is an American citizen. *Garcia v. Kerry*, 557 F. App'x 304, 308 (5th Cir. 2014) (per curiam) (citing *De Vargas v. Brownell*, 251 F.2d 869, 871 (5th Cir. 1958)). Proving a fact by a preponderance of the evidence means showing that the existence of said fact is more likely than not. *See Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 572 (5th Cir. 2011). All doubts regarding citizenship, however, must be resolved

"in favor of the United States" and against the individual seeking citizenship. *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394–95 (5th Cir. 2006). A court "may not grant citizenship out of equity or in the interests of justice; rather, a person is a United States citizen only by the manners and means prescribed by Congress." *Sanchez v. Kerry*, Civil Action No. 4:11-cv-2084, 2014 WL 2932275, at *4 (S.D. Tex. June 27, 2014) (citing *INS v. Pangilinan*, 486 U.S. 875, 883–84 (1988) and *Pena-Sanchez v. Clinton*, No. 11-cv-125, Order, ECF No. 34, at 2) (S.D. Tex. Mar. 28, 2013)).

Plaintiff claims that she acquired citizenship from her U.S. citizen mother. Such a derivative citizenship claim is determined under the law in effect at the time of the plaintiff's birth. *Iracheta*, 730 F.3d at 423 ("The applicable law for transmitting citizenship to a child born abroad when one parent is a citizen is the statute in effect at the time of the child's birth."). Plaintiff was born on April 19, 1953, in Matamoros, Tamaulipas, Mexico. Manuela was born on July 18, 1927, in Weslaco, Texas. The applicable law of derivative citizenship for a child born outside of the United States to one United States citizen parent and one alien parent at the time Plaintiff was born is contained in the Immigration and Nationality Act of 1952, 8 U.S.C. § 1401 *et. seq.*, which provides that:

> [A] person born outside the geographical limits of the United States and its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States . . . for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years[.]

8 U.S.C. § 1401(a)(7) (1952); *see also Padron v. Pompeo*, Civil Action No. 1:18-cv-186, 2020 WL 832101, at *2 (S.D. Tex., Feb. 20, 2020); *Bermea v. Limon*, Civil Action No. 1:15-cv-97, 2018 WL 4103011, at *1 (S. D. Tex., July 17, 2018). "Physical presence . . . has its literal meaning and is computed by actual time spent in the United States." *Vega-Alvarado v. Holder*, No. CV 9-5591-RSWL, 2011 WL 333101, at *2 (C.D. Cal. Jan. 28, 2011). Physical presence, however, does not

have to be continuous and "the parent's physical presence in the country can be proved through evidence such as employment or military records, deeds, mortgages and/or leases, affidavits of third parties having actual knowledge of physical presence, bank records, and tax payments." *Id.* (citing *Alcarez-Garcia v. Ashcroft*, 293 F.3d 1155, 1158 (9th Cir. 2002) and 8 C.F.R. § 103.2(a)). Thus, to acquire derivative citizenship, Plaintiff must establish that Manuela was physically present in the United States for at least ten years before the year of Plaintiff's birth in 1953, five years of which were after her mother attained the age of fourteen in July 1941.

## C.    Summary Judgment Evidence

It is undisputed that Manuela is a natural born U.S. citizen who was born on July 18, 1927, in Weslaco, Texas, and was baptized on September 18, 1927, in Mercedes, Texas.  (Docket No. 1-2, at 1–2; Docket No. 30-1, at 8–9.)  Also undisputed is that seven of Plaintiff's siblings—and Plaintiff herself—were born in Mexico, while Plaintiff's youngest sibling was the only sibling who was born in the United States:

- Evangelina Fernandez, born in October 1948, in Matamoros, Tamaulipas, Mexico[3]

- Blanca Amelia Fernandez, born in November 1949, in Matamoros, Tamaulipas, Mexico[4]

- Oralia Salazar, born in January 1952, in Matamoros, Tamaulipas, Mexico

- Ofelia Fernandez, born in January 1952, in Matamoros, Tamaulipas, Mexico

- Plaintiff, born in April 1953, in Matamoros, Tamaulipas, Mexico

- San Juanita Villalpando, born in August 1954, in Matamoros, Tamaulipas, Mexico

---

[3] In her deposition, Plaintiff testified that Evangelina was born in 1948 (*see* Docket No. 30-3, Plf.'s Dep. at 8:23-9:3); however, in her answers to the Government's interrogatories, she averred that Evangelina (referred to as "Angelina" in the deposition) was born in 1949 (*see* Docket No. 30-2, at 3.)

[4] In her deposition, Plaintiff testified that Blanca Amelia was born in 1949 (*see* Docket No. 30-3, Plf.'s Dep. at 9:4-7); however, in her answers to the Government's interrogatories, she averred that Blanca Amelia was born in 1950 (*see* Docket No. 30-2, at 3.)

- Francisca Bolin, born in December 1955, in Matamoros, Tamaulipas, Mexico

- Rosa Idalia Fernandez, born in September 1960, in G. Reynosa, Tamaulipas, Mexico[5]

- Martha Fernandez, born in June 1963, in McAllen, Texas, United States

(Docket No. 30-3, Plf.'s Dep. at 9:2-13, 16:4-22; Docket No. 30-2, at 3–4.)

The main piece of evidence Plaintiff relies upon in support of her derivative-citizenship claim is an affidavit from her maternal uncle, Gumesindo Cardona ("Gumesindo").  (*See* Docket No. 34, at 2–3; Docket No. 30-1, at 18–19.)  The affidavit is dated January 14, 2016, and in it Gumesindo declares the following:

1. My name is Gumesindo Cardona.  I was born on January [redacted], 1925. I am now 91 years old and of sound mind.

2. I currently live in 3109 Francisca Ave. McAllen TX 78503.  I was born in Raymondville, Texas, baptized in San Benito, Texas and raised in Santa Maria, Nuevo Leon, Mexico.

3. I am the oldest brother to Manuela Cardona Gonzalez, Maria Graciela Fernandez's mother.  My sister Manuela Cardona was born in Weslaco, Texas.  She was baptized in Mercedes, Texas and raised in Santa Maria, Nuevo Leon, Mexico.  My parents were repatriated to Mexico in the 1930's and they took me and my sister Manuela Cardona with them to the area of Santa Maria, Nuevo Leon, Mexico.  I was 6 years old and my sister was four years old.

4. I remember that I moved back to the United States.  I was 19 years of age and I arrived to the McAllen area.  There was a ranch on the 23rd Street in McAllen, TX.  I didn't know anything of the city back then.  In approximately a year, in 1945 my sister Manuela Cardona moved with me to the United States in to the ranch in McAllen, TX.

5. After the ranch, we moved to another location, in the same city, I remember the Streets were Newport and Nineteenth and a half street.  We were renters and while living in that property I got married to Manuela Izaguirre.

---

[5] In her deposition, Plaintiff testified that Rosa was born in Reynosa, Tamaulipas, Mexico (*see* Docket No. 30-3, Plf's Dep. at 16:15-19); however, in her answers to the Government's interrogatories, she averred that Rosa was born in G. Diaz Ordoz, Tamaulipas, Mexico (*see* Docket No. 30-2, at 4.)

6.     My sister stated [sic] to work in labor in the area of McAllen, Texas, with a Victor Perales, a trucker that would find labor jobs to a lot of people including myself and my sister Manuela Cardona.

7.     After two years of living in the Newport property, I finally bought a lot in 2125 Demira, McAllen, Texas 78503.  My sister Manuela stayed with us for approximately a year.  In that year she would work in the labor from Monday to Fridays.

8.     My sister Manuela Cardona met her husband in Mexico and she would see him on the weekends.  She also would go to Mexico to deliver her children and return to the United States to work as soon as possible.  Her husband Francisco Fernandez would take care of the kids in Mexico while she would live in the United States and work.

9.     My sister Manuela Cardona was a live-in housekeeper after she worked as a laborer.  My sister would go to Mexico to visit the family every Friday after work and return to work in McAllen on Mondays.  She worked like that till the day she died.

(Docket No. 30-1, at 18–19.)[6]

As part of the discovery in this case, Plaintiff responded to a number of interrogatories propounded by the Government.[7]  In her answers to the interrogatories, Plaintiff states that after Manuela's birth in 1927, her mother remained in Texas until sometime in 1929, whereupon she moved to Mexico.  (Docket No. 30-2, at 2–3.)  Plaintiff goes on to state that "[f]rom 1945 until 1953 and beyond my mother resided with her brother in McAllen, Texas at various addresses." (*Id.* at 3.)  Plaintiff further states that her mother "resided in Mexico from 1929 until 1945.  She

---

[6] In her answers to interrogatories propounded by the Government, Plaintiff states that Gumesindo is the only person who Plaintiff knows that has knowledge of any facts or information relating to Manuela's residence between July 1927 and April 1953.  (*See* Docket No. 30-2, at 5–6.)

[7] It is not entirely clear when the interrogatories were answered.  A public notary certified the interrogatories on August 20, 2020, (*see* Docket No. 30-2, at 7), but the certificate of service serving the answers to the interrogatories on the Government is dated March 30, 2020 (*see id.* at 8.)  Nonetheless, it is clear that Plaintiff answered the interrogatories before she sat for her deposition because at her deposition, she confirmed that she had answered the interrogatories truthfully.  (*See* Docket No. 30-3, Plf.'s Dep. at 12:8-23.)

moved to the United States in 1945 but would return to Mexico most weekends and when she had myself and my siblings." (*Id.* at 5.)

The Government deposed Plaintiff on August 20, 2020. (*See* Docket No. 30-3.) Plaintiff's testimony during her deposition, however, conflicts in certain respects with her sworn answers to the interrogatories. At her deposition, Plaintiff stated that her father and mother met in Mexico and were subsequently married in Mexico in 1946.[8] (Docket No. 30-3, Plf.'s Dep. at 8:1-19.) Plaintiff testified that once her parents were married, they lived in Matamoros, Mexico. (*Id.* at 9:14-19). Plaintiff goes on to confirm that her parents lived in Matamoros from 1946 until 1953. (*Id.* at 9:17-10:8.) During this time, Plaintiff's father worked at a ranch in Matamoros and Manuela did not work outside the home; instead, she took care of the family home. (*Id.* at 10:19-11:12, 15:21-16:1.) According to Plaintiff, her mother did not work between the years of 1953 and 1963. (*Id.* at 17:5-8.) Plaintiff testified that her mother first started going to the United States around 1962 to work in the fields, and that she would stay with her brother, Gumesindo. (*Id.* at 17:19-18:2.) Plaintiff testified that between the years of 1967 and 1969 her mother would "come and go" between Texas and Mexico; in particular, Manuela would come to Texas and stay with her brother in order to work in the fields where she would "remain . . for a week, and after that she [would] go back [to Mexico]." (*Id.* at 13:11-14:5.)

**D.     The Parties' Arguments**

In its motion for summary judgment, the Government argues that Plaintiff has not met her burden to prove that her mother was physically present in the United States for at least ten years between July 1927 and April 1953, with at least five of those years being after July 1941. In particular, the Government argues that Plaintiff lacks any admissible evidence supporting her

---

[8] Plaintiff has also provided a copy of her parents' marriage certificate, which confirms that they were married on August 19, 1946, in Tamaulipas, Mexico. (*See* Docket No. 30-1, at 13–14.)

contention that Manuela was physically present in the United States during the requisite time period. In support of this argument, the Government asserts that because Plaintiff does not have personal knowledge of events occurring before her birth—i.e., Plaintiff relies on hearsay statements concerning her mother's physical locations before her birth—any testimony offered by Plaintiff herself cannot satisfy Federal Rule of Evidence 602. The Government further argues that Plaintiff has not presented any evidence to support her interrogatory responses about Manuela's physical presence in the United States, and that there is no documentary evidence suggesting that Manuela was present in the United States at any time between September 1927 (when Manuela was baptized in Texas) and June 1963 (when Manuela's youngest child was born in Texas). Instead, the Government argues that the evidence indicates that Manuela lived in Mexico during the relevant period, pointing out that Manuela got married in Mexico in 1946 and gave birth to several children in Mexico from 1949 to 1960.

Second, the Government asserts that Plaintiff cannot rely on Gumesindo's affidavit because despite repeated attempts to depose Gumesindo, Plaintiff never made Gumesindo available before the discovery deadline passed, and, accordingly, the Government was unable to cross-examine him regarding his statements attesting to Manuela's physical presence in the United States.[9] The Government argues that because Gumesindo is unable to testify, his affidavit is

---

[9] The undersigned notes that, for various reasons, the discovery deadline has been extended several times in this case. (*See* Docket No. Nos. 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26.) In particular, on August 31, 2020, Plaintiff filed a motion for an extension of the discovery deadlines, stating that depositions were taken on August 20, 2020, but that "a witness important to the case, [Gumesindo,]" "was unable to proceed with his virtual deposition" because "[h]e could not hear or was unable to hear and comprehend what was transpiring." (Docket No. 20, at 1.) Plaintiff requested to extend the discovery deadlines so that she could "determine if [Gumesindo] will be physically able to complete his deposition or to testify." (*Id.*) The court granted the request for an extension. (*See* Docket Nos. 22, 24.) On January 8, 2021, the Government filed a motion to extend the motion deadline. (*See* Docket No. 27.) In the motion, the Government stated that counsel for the Government has "repeatedly contacted Plaintiff's counsel to determine whether [Gumesindo] could testify and to reschedule his deposition. But Plaintiff never made [Gumesindo] available before the discovery deadline passed." (*Id.* at 2.)

hearsay. The Government claims that the only potential hearsay exception is found in Federal Rule of Evidence 804(b)(4), the exemption regarding a "Statement of Personal or Family History." The Government claims that this exception does not apply here because "physical relocation" is not one of the familiar matters anticipated by Rule 804(b)(4). Because the affidavit is hearsay and no exception applies, the Government argues that it is inadmissible.

Next, the Government asserts that even if Gumesindo's affidavit falls within a hearsay exception, it does not contain sufficient details to meet Plaintiff's burden of proof. Finally, the Government posits that even if Gumesindo's affidavit were admissible and the Court found it sufficient to establish that Manuela lived in the United States for a few years beginning in 1945, the affidavit does not show that Manuela was physically present in the United States for at least ten years between July 1927 and April 1953, with five of those years being after July 1941.

In response to the Government's motion for summary judgment, Plaintiff argues that genuine issues of material fact remain regarding Manuela's presence in the United States, thus making a grant of summary judgment inappropriate. Plaintiff first asserts that her testimony is admissible under Federal Rule of Evidence 602 because she obtained personal knowledge from her mother and uncle. Next, Plaintiff argues that Gumesindo's affidavit is admissible under Federal Rule of Evidence 804(b)(4) because his affidavit "details landmark events including repatriation of his parents, his marriage, and his living situation." (Docket No. 34, at 4.)

The Government has filed a reply, again asserting that Gumesindo's affidavit is inadmissible hearsay, and that even if his affidavit fell within a hearsay exception, it does not contain sufficient details to establish Manuela's physical presence in the United States during the requisite time period. (Docket No. 37.)

### III.    ANALYSIS

12

### A.   Gumesindo's Affidavit

1.   Gumesindo's affidavit does not fall within the hearsay exception contained in FRE 804(b)(4)

The primary piece of evidence relied upon by Plaintiff is Gumesindo's affidavit.  (*See* Docket No. 34, at 2–3.)  The undersigned recognizes that despite a general prohibition against consideration of inadmissible hearsay evidence at the summary judgment stage, the court "may consider hearsay at the summary judgment stage if the hearsay could be reduced to a form admissible at trial."  *Heller v. Shahroodi*, No. H-17-2554, 2019 WL 1556315, at *3 (S.D. Tex. Feb. 20, 2019) (citing *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 161 (5th Cir. 2008) (per curiam)).  "The most obvious way that hearsay testimony can be reduced to admissible form is to have the hearsay declarant testify directly to the matter at trial."  *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1294 (11th Cir. 2012) (citing *Pritchard v. S. Co. Servs.*, 92 F.3d 1130, 1135 (11th Cir. 1996)); *see also Dunigan v. Miss. Valley State Univ.*, No. 4:19-cv-33-DMB-JMV, 2020 WL 9606765, at *4 (N.D. Miss. Oct. 16, 2020) ("Ordinarily, a party may show that hearsay could be presented in admissible form by identifying the third-party declarant and confirming that the declarant will be available to testify at trial.") (citations omitted).  In the Advisory Committee Notes to the 2010 Amendments to Rule 56, the Committee remarks that "Subdivision (c)(2) provides that a party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. . . . The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."  Fed. R. Civ. P. 56, Advisory Comm. Notes, 2010 Amendment, Subdivision (c)(2).  "In other words, while a party opposing summary judgment is not required to produce evidence in a form that would be admissible at trial, the evidence still must be capable of being converted into admissible evidence."  *In re Chiquita Brands Int'l, Inc.*, Case No. 08-1916-MD-

MARRA, 2019 WL 11497632, at *13 (S.D. Fla. Sept. 5, 2019) (cleaned up). "If it were otherwise, the objective of summary judgment—to prevent unnecessary trials—would be undermined." *Id.* (cleaned up).

By all accounts, Gumesindo is not available to testify at trial.[10]  After review of the record, it does not appear that Plaintiff has stated that an admissible form of Gumesindo's affidavit—i.e., Gumesindo actually testifying at trial—is anticipated.  Despite several extensions of the discovery deadline, Plaintiff still has not made Gumesindo available for cross-examination by the Government.  At this point in time, the court can only assume that Plaintiff does not intend to make Gumesindo available to testify at trial, and, thus, Gumesindo is considered "unavailable" as contemplated by Federal Rule of Evidence 804(a).   Accordingly, Plaintiff's reliance on Gumesindo's affidavit to support her claim of derivative citizenship is hearsay.

As discussed earlier, "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.'" *El-Mezain*, 664 F.3d at 494–95 (quoting Fed. R. Evid. 801(c)).  Hearsay is generally inadmissible

---

[10] Federal Rule of Evidence 804(a) provides that a declarant is considered to be unavailable as a witness if the declarant:

> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies;
> (2) refuses to testify about the subject matter despite a court order to do so;
> (3) testifies to not remembering the subject matter;
> (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or
> (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure:
>> (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or
>> (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule(b)(2), (3), or (4.)

Fed. R. Evid. 804(a).

unless an exception applies. *See* Fed. R. Evid. 802. To that end, Plaintiff argues that Gumesindo's affidavit is admissible under Rule 804(b)(4), "Statement of Personal or Family History," as an exception to the rule against hearsay. Rule 804(b)(4) excepts from the rule against the admissibility of hearsay statements a statement about

> (A) the declarant's own birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, or marriage, or similar facts of personal or family history, even though the declarant had no way of acquiring personal knowledge about that fact; or
>
> (B) another person concerning any of these facts, as well as death, if the declarant was related to the person by blood, adoption, or marriage, or was so intimately associated with the person's family that the declarant's information is likely to be accurate.

Fed. R. Evid. 804(b)(4).

Gumesindo's testimonial statements about Manuela's physical presence in the United States are not statements about "birth, adoption, legitimacy, ancestry, marriage, divorce, relationship by blood, adoption, [death,] or marriage," and, thus his testimonial statements concerning Manuela's physical presence in the United States are only admissible if they constitute a "similar fact of personal or family history."

Rule 804(b)(4) "is limited in scope and generally applies to facts concerning family pedigree and relationships . . . because those facts are likely to be marked events in ordinary family history and based on accurate knowledge and sufficient inquiry." *Porter v. Quarantillo*, No. 12-cv-590, 2012 WL 6102875, at *6 (E.D.N.Y. Dec. 7, 2012), *aff'd*, 722 F.3d 94 (2d Cir. 2013). The test at common law was whether "the circumstances named in the statement [were] such a marked item in the ordinary family history and so interesting to the family in common that statements about them in the family would be likely to be based on fairly accurate knowledge and to be

15

sincerely uttered?'" *Porter v. Quarantillo*, 722 F.3d 94, 98 (2d Cir. 2013) (quoting 5 Wigmore on Evidence § 1502, p. 400 (J. Chadbourn rev. 1974)).

Gumesindo's testimonial statements regarding Manuela's physical presence in the United States do not qualify as "personal or family history" within the scope of Rule 804(b)(4). Similar to the affidavit in *Porter*, 2012 WL 6102875, where the court held that the declarant's statement that she relocated at a particular age—as opposed to the fact that she relocated in general—was not likely to be based on accurate knowledge and sufficient inquiry and therefore was not covered by the exception in Rule 804(b)(4), here, the statements about Manuela contained in Gumesindo's affidavit are not being offered to show that Manuela was simply physically present in the United States at some point; rather, Plaintiff offers the affidavit to meet a particular time period totaling ten years that Manuela was physically present in the United States. The specific dates of Manuela's travels to or stays in the United States—which, again, need to total ten years between July 1927 to April 1953, at least five of which must be after July 1941 in order for Plaintiff to be successful in her derivative-citizenship claim—are not likely to be based on accurate knowledge and sufficient inquiry. *See Porter*, 2012 WL 6102875, at *6 (finding that a statement about "an individual's specific age at the time of travel, or, indirectly, the date of travel, is not likely to be based on accurate knowledge and sufficient inquiry"); *Vega-Alvarado*, 2011 WL 333101, at *4 (holding that "[declarant']s statements concerning his time and work in the United States do not constitute 'personal or family history' within the meaning of [FRE 804(b)(4)]" and "do not concern matters of pedigree, such as the fact or date of a birth, marriage, or death, nor do they relate to the existence of a ceremony or family relationship."). As observed by the Second Circuit in *Porter*, while "a change in one's country of residence or in one's citizenship might, like the date of one's birth, death, or marriage, be a matter of interest within a family," the precise age at which such a

change occurred likely would not be of such interest. *Porter*, 722 F.3d at 98–99. Similarly, here, even assuming that if the comings and goings of a family member between two countries *might* be a matter of interest within a family, the exact dates and period of time spent in the respective countries would not be a matter of interest within a family. *See, e.g.*, *Gupta v. Att'y Gen. of U.S.*, Case No. 12 Civ. 5637 (FM), 2014 WL 1116730, at *6–7 (S.D.N.Y. Mar. 20, 2014) (holding that any testimony regarding the dates of plaintiff's father's travels to and from the United States did not come within the exception contained in FRE 804(b)(4) because even if "the family's pride and excitement regarding [plaintiff's] father's move to the United States elevated the *fact* of his move to the level of a birth, death, or marriage, it does not follow that the *dates* of [plaintiff's father's] travels to and from [the United States] were similarly important"). Gumesindo's affidavit does not otherwise "provide any facts or special circumstances that might indicate that there had, in fact, been sufficient inquiry and discussion by [the] family on [Manuela's physical presence in the United States]." *Porter*, 2012 WL 6102875, at *6.[11]

Finally, several other courts that have also been tasked with determining whether the exception contained in FRE 804(b)(4) applies in similar factual scenarios have held that "physical relocation does not fall into the category of familial matters anticipated by Rule 804(b)(4)." *Bermea*, 2018 WL 4103011, at *2 (holding that affidavit from plaintiff's mother concerning her physical location during the period of time between 1954 and 1961 was not admissible under Rule

---

[11] That Manuela's travels to the United States are not likely to be based on accurate knowledge and sufficient inquiry are underscored by the fact that Gumesindo's affidavit is essentially devoid of any dates regarding Manuela's physical presence in the United States. Besides stating that Manuela came to the United States in 1945, Gumesindo's affidavit does not contain any specific dates of when Manuela was physically present in the United States; it merely states that Manuela met her husband in Mexico, that she would "go to Mexico to deliver her children and return to the United States to work as soon as possible," and that she would go to Mexico to visit family every weekend and return to McAllen on Mondays for the work week.

804(b)(4) because physical relocation does not fall into the category of familial matters anticipated by the rule); *see also Porter*, 722 F.3d at 98 (affirming trial court's ruling that affidavit from plaintiff's mother concerning the age at which she moved from New York to St. Vincent and the Grenadines did not fit within FRE 804(b)(4)'s hearsay exception and noting that "[A] false reputation as to birth, death, or marriage is not likely to arise at any time. However, there is a greater possibility of inaccuracy concerning other aspects of family history, such as an ancestor's travels.") (citation omitted); *Vega-Alvarado*, 2011 WL 333101, at *4 (finding that the deposition testimony from plaintiff's father regarding his time and work in the United States was hearsay not subject to the limited exception contained in FRE 804(b)(4) and was thus inadmissible); *Luque v. Blinken*, No. CV-330-TUC-JGZ, 2021 WL 2328044, at *8 (D. Ariz. June 8, 2021) (finding that testimony of plaintiff's mother "as to where she lived from birth to age five and the suggested inference that she was continuously in the United States during this five-year period, is not the kind of personal or family history admissible under either Rule 804(b)(4) or 803(19.)").

Plaintiff's arguments that the *Porter* and *Vega-Alvarado* cases are distinguishable from the instant case are not persuasive. Plaintiff first argues that the *Porter* case, in which the court held that the proposed hearsay evidence did not come within the exception contained in Rule 804(b)(4), is distinguishable from this case because Gumesindo's affidavit "provides a family history" that "details landmark events including repatriation of his parents, his marriage, and his living situation." (Docket No. 34, at 4.) While it may be true that portions of Gumesindo's affidavit could fall under the Rule 804(b)(4) exception, for the reasons discussed above, the portions regarding Manuela's comings and goings from the United States do not fall within the exception. Next, Plaintiff argues that the *Vega-Alvarado* case is distinguishable from the facts of this case because the court in *Vega-Alvarado* found that the plaintiff's father's testimony was not admissible

18

under Rule 804(b)(4) only after the court made a credibility determination. While it is true that credibility determinations cannot be made at the summary judgment stage, the court need not make a credibility determination to make an evidentiary ruling regarding Gumesindo's affidavit. *See Gauck v. Meleski*, 346 F.2d 433, 436 (5th Cir. 1965) (explaining that a court may "assess the evidence presented upon the motion for summary judgment to determine its admissibility"); *Gilmore v. Palestinian Interim Self-Gov't Auth.*, 53 F. Supp. 3d 191, 201 (D.D.C. 2014), *aff'd*, 843 F.3d 958 (D.C. Cir. 2016) ("[I]t is proper for the Court to rule on the admissibility of hearsay evidence in the context of a motion for summary judgment and to grant the motion if it finds that Plaintiff's proffered evidence consists only of inadmissible hearsay."). Moreover, the judge's determination in *Vega-Alvarado* that the plaintiff's father's testimony did not fall within the Rule 804(b)(4) hearsay exception was *not* based on any credibility determination made by the court; instead, the court made an evidentiary ruling that the father's testimony regarding his time and work in the United States did not constitute "personal or family history" within the meaning of the exception. *See* 2011 WL 333101 at *4.

Accordingly, because Gumesindo's affidavit does not fall into the hearsay exception contained in Rule 804(b)(4), and it does not appear that any other exception applies—and Plaintiff has not argued that one does—his affidavit is hearsay and is thus inadmissible.

2.    <u>Gumesindo's affidavit is vague</u>

Even if Gumesindo's affidavit were not inadmissible hearsay, the affidavit does not contain sufficient details to meet Plaintiff's burden of proof to designate specific, probative facts showing that there is no genuine issue for trial. As noted *supra* in footnote 11, Gumesindo's affidavit is essentially devoid of any dates regarding Manuela's physical presence in the United States. Besides stating that Manuela came to the United States in 1945, Gumesindo's affidavit does not

contain any specific dates or other supporting details of when Manuela was physically present in the United States; instead, the affidavit merely states that Manuela met her husband in Mexico, that she would "go to Mexico to deliver her children and return to the United States to work as soon as possible," and that she would go to Mexico to visit family every weekend and return to McAllen on Mondays to work for the week. Like the affidavit in *Bermea*, where the court found that an affidavit from plaintiff's mother was too vague to meet plaintiff's burden of proof to support his claim of derived citizenship, here, Gumesindo's affidavit is "couched in the vaguest of terms" that "does little to establish [Manuela's] presence in the United States at any given time." 2018 WL 4103011 at *3. Accordingly, even if the affidavit were admissible, it is too vague, ambiguous, and factually insufficient to carry Plaintiff's burden of proof.

Moreover, an additional issue presented by Gumesindo's affidavit is that Gumesindo does state the basis of his knowledge regarding the statements concerning Manuela's physical presence in the United States. Although an affidavit need not specifically state that it is based on personal knowledge, it "must include enough factual support to show that the affiant possesses that knowledge." *Thomas v. Atmos Energy Corp.*, 223 F. App'x 369, 374 (5th Cir. 2007) (citation omitted); *see also LSR Consulting, LLC v. Wells Fargo Bank*, 835 F.3d 530, 534 (5th Cir. 2016) (finding that affidavits contained "sufficiently specific statements for the district court to infer that the affiants had personal knowledge of the facts attested therein"). While Gumesindo states that Manuela moved in with him in 1945 and that Manuela stayed with him for approximately one year while he lived at the property located at 2125 Demira and such personal knowledge may be inferred because Manuela lived with him during this (albeit, unspecified) period of time, Gumesindo does not state the basis of his knowledge for his statements that Manuela "would go to Mexico to deliver her children and return to the United States to work as soon as possible," that Manuela's husband

would take care of the kids in Mexico while Manuala lived and worked in the United States, or that Manuela "would go to Mexico to visit the family every Friday after work and return to work in McAllen on Mondays." An affidavit must be made on personal knowledge, and nowhere does Gumesindo provide the basis of his personal knowledge for such statements. The court thus disregards the portions of Gumesindo's affidavit that concern Manuela's physical presence in the United States for failure to comply with Federal Rule of Civil Procedure 56(c)(4). *See Gahagan v. U.S. Citizenship & Immigr. Servs.*, 147 F. Supp. 3d 613, 621 (E.D. La. 2015) ("When considering a motion for summary judgment, a court disregards any portion of a declaration [or affidavit] that fails to comply with Rule 56(c)(4).") (citing *Akin v. Q-L Invests., Inc.*, 959 F.2d 521, 531 (5th Cir. 1992)).[12]

**B.    Plaintiff's Testimony**

The Government argues that in addition to the inadmissibility of Gumesindo's affidavit, Plaintiff's testimony regarding Manuela's physical presence in the United States during the requisite time period is also inadmissible because Plaintiff lacks personal knowledge of the circumstances before her birth. "A witness's testimony must be based on personal knowledge." *El-Mezain*, 664 F.3d at 495 (citations omitted); *see also* Fed. R. Evid. 602. Despite Plaintiff admitting that she "would have no knowledge of what happened before she was born," Plaintiff contends that "she would be able to testify under the exception under Rule 602 [because] she obtained personal knowledge from her mother and her uncle[, Gumesindo]." (Docket No. 34, at 3.) The only authority Plaintiff cites for this proposition is *United States v. Quezada*, 754 F.2d 1190 (5th Cir. 1985). *Quezada*, however, does not stand for this proposition; instead, in *Quezada*,

---

[12] Because Gumesindo's affidavit is inadmissible hearsay and otherwise lacks specificity, the court need not consider the Government's third argument—that is, the affidavit does not show that Manuela was physically present in the United States for the requisite time period.

the Fifth Circuit explained that even if testimony is based in part on inadmissible hearsay, "Rule 602 will be satisfied if evidence is introduced sufficient to support a finding that [the witness] has personal knowledge of the matter." 754 F.2d at 1195 (citing Fed. R. Evid. 602).

Here, Plaintiff has admitted that she has no personal knowledge of her mother's whereabouts before she was born. Plaintiff also states that any knowledge she has, she obtained from her mother and her uncle, Gumesindo. A witness, however, may not "rely on inadmissible hearsay as a substitute for his own knowledge." *El-Mezain*, 664 F.3d at 495 ("Rule 602 prevents a witness from testifying about a hearsay statement upon which he has no personal knowledge.") (citing *Quezada*, 754 F.2d at 1195). Accordingly, Plaintiff's testimony contained in her deposition and answers to interrogatories regarding her mother's physical presence in the United States before 1953—and any testimony offered by Plaintiff at trial regarding same—are based on hearsay and are not admissible. *See El-Mezain*, 664 F.3d at 495 (explaining that if a witness was merely repeating what someone had told him, "it would be hearsay and inadmissible") (citations omitted); *In re Grandote Country Club Co. Ltd.*, 252 F.3d 1146, 1153 (10th Cir. 2001) (explaining that the plaintiff cannot oppose summary judgment based on his own testimony when his personal knowledge was based on another person's inadmissible hearsay statement); *Caulfield v. Kathryn Rae Towing*, Civ. A. No. 88-5329, 1989 WL 121586, at *3 (E.D. La. June 6, 1989) (explaining that plaintiff was "not competent to testify about another person's . . . knowledge; he can only testify from personal knowledge") (citation omitted.)

Plaintiff has not otherwise presented any other evidence to support her contentions regarding Manuela's physical presence in the United States for the required period of ten years between July 1927 and April 1953, five years of which must be after July 1941.[13] Accordingly,

---

[13] Although the court is not permitted to weigh the evidence at the summary judgment stage, as pointed out by the Government, the only admissible evidence concerning Manuela's physical presence in

because Plaintiff has failed, after sufficient time for discovery, to submit admissible and probative evidence of an essential element of her case that she bears the burden of proving—that is, that Manuela was physically present in the United States for at least ten years before April 1953, five years of which were after July 1941—Defendants are entitled to a grant of summary judgment in their favor.

## IV.     CONCLUSION

For the foregoing reasons, the undersigned respectfully recommends that the Government's Motion for Summary Judgment (Docket No. 30) be GRANTED, that Plaintiff's claims be DENIED, and that this case be DISMISSED.

## CERTIFICATE OF APPEALABILITY

A certificate of appealability is not required to appeal a case under 28 U.S.C. § 2241. *See Montano v. Texas*, 867 F.3d 540, 547 n.8 (5th Cir. 2017) (citing *Ojo v. I.N.S.*, 106 F.3d 680, 681 (5th Cir. 1997) and *Padilla v. United States*, 416 F.3d 424, 425 (5th Cir. 2005)).

## NOTICE TO THE PARTIES

The Clerk shall send copies of this Report and Recommendation to counsel for the parties, who have fourteen (14) days after receipt thereof to file written objections pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in this Report and, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

---

the United States during the relevant time period—that Manuela was married in Mexico in 1946 and had five children who were born in Mexico between the years of 1948 and 1953—supports that Manuela was physically present in Mexico during the relevant time period.

DONE at McAllen, Texas on June 22, 2021.

Nadia S. Medrano
UNITED STATES MAGISTRATE JUDGE